PLINY BLISS *vs.* JOSEPH ROLLINS.            CALEDONIA,
                                              *March,*
                                               1834·

The court will not set aside a report of referees for a mistake in law, unless it appears
that they intended to follow the law.

When a person requests another to purchase a note against himself, and after the
purchase, promises to pay the contents to the purchaser, he cannot set up the want
of consideration as a defence in an action on the note brought by the purchaser.

This was an action upon a promissory note, dated November 3d, 1831, payable in six months to Benjamin Bishop, Jr. or bearer, originally commenced before a justice, and brought by appeal to the county court, by whom it was, by consent of parties, referred to the determination of referees, who reported in favor of the plaintiff's recovery of the amount of the note. The defendant made exceptions to the report, which were over-ruled, the report accepted, and upon exceptions filed and allowed to this decision of the court, the cause comes here for further adjudication.

The following special statement of facts in substance, was made by the referees :—That on the evening of the day when the note was given, the payor and payee of the same came together at the tavern of one Nichols, and exchanged horses ;— Rollins to give Bush 35 dollars to boot, of which the note declared on was then and there given as a part.—That at the time of the execution of the note, in answer to an observation of Rollins that 35 dollars was a great price for a horse unless sound, Bush replied, that the horse was sound, and that he would warrant him sound. (This was about ten o'clock, P. M.) The same evening Rollins met Bliss, the plaintiff, and offered to sell him the horse he had of Bush : Bliss examined the horse, and told Rollins he was lame in the presence of Bliss : Rollins replied, if Bush had put upon him an unsound horse, he would sue him. Bush then said he would pay Rollins' bill rather than have difficulty, if he would rescind the trade. Rollins then requested Bliss to purchase the note of Bush, as he was not acquainted with him, and that he would pay him.— Bliss purchased the note of Bush, and next morning informed Rollins (who remained through the night at the tavern aforesaid) of the same, who replied, that he would pay it, and requested Rollins to go home with him and he would turn him out a pair of steers. The referees further reported, that Rollins was in some degree intoxicated in the evening, and next morning after breakfast that Rollins said to Bliss and others;

CALEDONIA,
March,
1834.

Bliss
vs.
Rollins.

he would never pay the note—that the horse was lame with a ring-bone, which was perfectly apparent, and has been lame ever since, and that the horse is worth 25 dollars less for such lameness; and that Bush, at the time of trial was, and is still, poor.

*B. H. Davis for defendant,* insisted, 1st, It appears by the facts found by the referees, that the note in question is void for want of consideration. The facts set forth in the report show that the note was given for boot between horses; and that the horse, Bush, the original payee of the note, let the defendant have, was unsound.—*Sill* vs. *Rood,* 15 John. R. 230.—*Bliss* vs. *Negus,* 8 Mass. R. 46.—2 Stark. Ev. 280, note 1.

2d. The note is void, because it appears the defendant was intoxicated when the note was given.—See 2d vol. Aikens' Reports, 167.

Bliss, the present plaintiff, cannot claim to stand in a better situation in law, than Bush.—See Stat. 144.

Again: The plaintiff has not set up any special promise to himself from Rollins.

Again: When Rollins requested Bliss to purchase, and promised to pay the note, he was intoxicated.

And further: When Rollins, immediately after breakfast, found the horse was lame, he notified plaintiff he should not pay the note.

It appears also from the report, plaintiff knew of the cheat before he purchased the note;—therefore, he bought it at his peril.

*Mr. Skinner for plaintiff.*—1. There is no evidence of a warranty in this case, from the report of the referees, previous to, or at the time of the bargain.

2. If there had been an express warranty by Bush to Rollins, or fraud on the part of Bush, still Rollins, by his request to Bliss to purchase the note, and his promise to pay, *waived* the benefit of it.

3. The report of the referees shows that Rollins was, to *some degree,* intoxicated in the evening, and next morning after breakfast.

It by no means follows from this, that Rollins was intoxicated when he entered into the contract, or at the time of his promise to pay Bliss the note in consideration that he would purchase it.

A party cannot avoid his own contract on account of *partial intoxication*. He must in any event be deprived of his reasoning powers, so that he could not possibly have any agreeing or disagreeing mind.—2 Aik. 167.

CALEDONIA,
March,
1834.

Bliss
vs.
Rollins.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—It does not appear in this case that the referees, intending to follow the law, have made a plain and apparent mistake. When they intend to follow the law, and on a doubtful point make a mistake, yet this is not always a reason for setting aside their report, unless the mistake evidently led them to a wrong conclusion on the whole case. On this ground alone, there is no reason for setting aside the report in this case. Besides, it is apparent from the facts, as reported by the referees, that this decision was right. The defendant requested the plaintiff to purchase the note, and after the purchase, promised to pay the contents to him. It was not competent for him, after this, to set up as a defence the want of consideration.

Upon the subject of the intoxication of the defendant, the report is not so drawn up that we can consider the question which the defendant has urged. If the intoxication was of that nature that the defendant was wholly incapable of making a contract at the time he requested plaintiff to purchase, and at the time he promised to pay, it should have so appeared in the statement of the referees ; and if the referees considered and meant to decide that intoxication could in no case be plead or made use of by the party to avoid a contract, their decision would have been erroneous; and the report should, for that reason, have been set aside. But if the intoxication was only to that extent that his admissions or declarations made while in that state, ought not to be entitled to the same credit as if made when sober, it would only affect the evidence, and detract from the weight which might otherwise be given to his admissions or declarations. On this subject, however, the referees would be the proper judges; and their decision upon the evidence, or weight of evidence, would not be reviewed or re-examined by the court to which their report was to be made. There is nothing in their report, by which we can learn, that it ought not to have been accepted ; and the judgment of the county court must be affirmed.